IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JASON RAY CLARK, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00073-O-BP |
| | § | |
| THE CHARLES SCHWAB | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
|     Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) the Motion to Dismiss (the "Colorado Defendants' Motion) (ECF No. 30) filed by Defendants the Colorado Division of Securities ("CDS"), the Colorado Department of Regulatory Agencies ("DORA"), and the Colorado Attorney General ("Colorado AG") (collectively the "Colorado Defendants") and appendix in support (ECF No. 31), the Response (ECF No. 38) filed by Plaintiff Jason Ray Clark ("Clark"), and the Colorado Defendants' Reply (ECF No. 40); (2) the Motion to Dismiss (Carters' Motion) (ECF No. 12) filed by Defendants Zach and Sara Carter (the "Carters"), Clark's Response (ECF No. 18), and the Carters' Reply (ECF No. 19); and (3) the Motion to Dismiss (FINRA's Motion) (ECF No. 24) filed by Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), Clark's Response (ECF No. 38), and FINRA's Reply (ECF No. 41).

Also before the Court are the Motion to Compel Arbitration ("CSC's Motion") (ECF No. 27) and unsworn declaration in support (ECF No. 28) filed by Defendant The Charles Schwab Corporation ("CSC") on May 6, 2024. The Court ordered Plaintiff Jason Ray Clark ("Clark") to file any response on or before May 28, 2024. ECF No. 33. To date, he has not responded to CSC's

Motion, and on May 20, he represented to CSC that he did not intend to do so. ECF No. 36-1. The Court warned Clark "that failure to file a response **by May 28, 2024** may result in a ruling on the Motion without response from" him. ECF No. 33 (emphasis in original). The Court finds that CSC's Motion is ripe for review.

This case was automatically referred to the undersigned pursuant to Special Order 3. ECF No. 2. For ease of reference, the Court refers to the motions to dismiss collectively as the "Motions." Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motions (ECF Nos. 12, 24, 27, 30) **in part**, **STAY** Clark's claims against CSC pending arbitration of Clark's dispute with CSC, and **DISMISS** Clark's remaining claims **without prejudice**.

I.   BACKGROUND

On January 22, 2024, Clark sued the defendants, alleging a slew of claims including breach of fiduciary duty, breach of contract, defamation, and fraud. ECF No. 1 at 2. Clark owns a registered investment advisor firm, Clark Brothers, Inc., which does business as "Clark Brothers Investment" (collectively "CBI"). ECF No. 27 at 4-5. In May 2018, CBI entered into an Investment Advisor Service Agreement (the "Agreement") with CSC's wholly owned securities broker-dealer subsidiary, Charles Schwab & Co., Inc. ("Schwab"). *Id.* at 9. He alleges that CSC and CDS "'thought' [he] was STEALING [sic] money from customers." ECF No. 1 at 2. Consequently, the Colorado Defendants revoked his securities license, and Schwab terminated the Agreement. *See* ECF No. 1.

Clark maintains that he did nothing wrong and alleges that Defendants' collusion led to the "total and complete destruction" of CIB. ECF No. 1 at 1. Among other relief, Clark seeks (1)

nearly $4 trillion in damages; (2) reinstatement of his securities licenses; (3) removal "of ALL DEFENDANTS from their respective positions [sic]"; and (4) that the Court order CSC to allow Clark back on its platforms. *Id.* at 4.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1) Dismissal for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). Rule 12(b)(1) motions present either "facial" or "factual" attacks. *Brown v. Peterson*, No. 7:03-cv-0205, 2006 WL 349805, at *4 (N.D. Tex. Feb. 3, 2006). Where, as here, the motion is "based on the complaint alone," the attack is facial, and the undersigned must "merely decide whether the allegations in the complaint, taken as true, sufficiently state a basis for subject matter jurisdiction." *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 953 (N.D. Tex. 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981)); *see also Parks v. Hinojosa*, No. 4:21-cv-00111-O, 2021 WL 1720219, at *2 (N.D. Tex. Apr. 30, 2021) (explaining that Rule 12(b)(1) motions are presumptively facial attacks).

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*,

3

81 F.3d 1182, 1187 (2d Cir. 1996)). Any dismissal for lack of subject matter jurisdiction "should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

    **B.**    **Pro Se Standard**

The Court subjects the pleadings of *pro se* parties to less rigid analysis than those of a party represented by counsel. Courts must hold "a *pro se* complaint, 'however inartfully pleaded,' . . . to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

    **C.**    **Eleventh Amendment Immunity Standard**

The Eleventh Amendment provides a ground for 12(b)(1) motions in actions against a state agent or entity. *See* U.S. CONST. amend. XI (providing that "[t]he Judicial power of the United States" does not extend to lawsuits "against one of the United States"). "The Eleventh Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies. . . . This immunity applies unless it is waived by consent of a state or abrogated by Congress." *Curry v. Ellis Cty., Tex.*, 3:08-cv-1675-L, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Plaintiffs may not sue states in federal court unless they unequivocally consent to suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst*, 465 U.S. at 99-100 (1984). Any official of any state agency may claim Eleventh Amendment immunity

if the lawsuit seeks relief that "would operate against the [State]." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). (per curiam). Eleventh Amendment immunity applies to claims seeking damages and injunctive relief alike. *Cory v. White*, 457 U.S. 85, 91 (1982).

### D. The Federal Arbitration Act

In the Federal Arbitration Act ("FAA"), Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir. 2002). When considering a motion to compel arbitration, the court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted)). Where there is a valid arbitration clause, "there is a presumption of arbitrability[,] and the court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts resolve doubts in favor of coverage. *Id.* (collecting cases).

### E. Rule 12(b)(2) Dismissal for Lack of Personal Jurisdiction

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A court must have personal jurisdiction over each defendant, so it assesses each defendant's contacts individually. *See Rush v. Savchuk*, 444 U.S. 320, 322 (1980). Although the court must accept all uncontroverted allegations in the complaint as true, this standard "does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253

F.3d 865, 869 (5th Cir. 2001) (per curiam). Making the prima facie case that personal jurisdiction extends to a nonresident defendant begins by determining "if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

The exercise of personal jurisdiction comports with due process when "first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). These minimum contacts give rise to either general or specific personal jurisdiction. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

For general jurisdiction, a plaintiff must establish that the defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Contacts that support general jurisdiction are so substantial that a nonresident "would expect to be sued in the state for any claim, including one not arising from his in-state activities." *Taylor v. Alex. Brown & Sons Inc.*, No. 3:02-cv-0818-P, 2002 WL 31245369, at *5 (N.D. Tex. Oct. 2, 2002) (citing *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977)).

Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citation and internal quotation marks omitted). When determining whether the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice, the Court balances "the burden on the

defendant having to litigate in the forum; the forum state's interest in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted). Dismissals for want of personal jurisdiction should be without prejudice. *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 (5th Cir. 2004).

### F.     Rule 12(b)(3) Dismissal for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) states that a party may move the court to dismiss for "improper venue." Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "When a defendant moves under Rule 12(b)(3) to dismiss because of improper venue, the plaintiff bears the burden of sustaining venue in the district in which suit was brought." *Tracfone Wireless, Inc. v. Stone*, No. 3:07-cv-1770-M, 2008 WL 648942, at *3 (N.D. Tex. Feb. 26, 2008). Venue is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). A dismissal under Rule 12(b)(3) should generally be without prejudice. *See* Fed. R. Civ. P. 41(b); *Lowery v. Estelle*, 533 F.2d 265, 267 (5th Cir. 1976).

### III.  ANALYSIS

#### A.  The Colorado Defendants have Eleventh Amendment Immunity.

Because the Court is one of "limited jurisdiction," jurisdictional challenges warrant threshold consideration. *Kokkonen*, 511 U.S. at 377. Here, the Colorado Defendants assert the Court lacks jurisdiction because the Eleventh Amendment affords them immunity from Clark's suit. ECF No. 30. The Eleventh Amendment is a "jurisdictional bar to suit in federal court against a state or one of its agencies," *Curry*, 2009 WL 2002915, at *3, meaning the Court lacks jurisdiction unless Congress abrogated such immunity or Colorado waived it. *See Pennhurst*, 465 U.S. at 99-100. Neither is the case here, and in addition to monetary damages, Clark seeks reinstatement of his securities licenses in the state of Colorado and removal of "ALL Individual DEFENDANTS from their respective positions [sic]." ECF No. 1 at 4. Because such relief "would operate against" the State, the Eleventh Amendment presumptively precludes federal jurisdiction over Clark's suit. *Gordon*, 373 U.S. at 58. But as discussed below, the Court cannot find jurisdiction lacking under the Eleventh Amendment without first determining whether Clark's claims fall under the exception outlined in *Ex parte Young* and its progeny.

##### 1.  The Colorado Defendants are arms of the state.

Courts in the Fifth Circuit determine whether a political entity is an arm of the state "by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002) (internal quotation marks and citation omitted). Courts consider six factors:

> (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems;

> (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Id.* (collecting cases). The second factor is the most important. *Id.* (citation omitted). The last two factors are the least important. *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002). Having considered the factors, the Court finds that the Colorado Defendants are arms of the state.

> *a..   Colorado law provides that the Colorado Defendants are arms of the state.*

Colorado statutes and caselaw characterize the Colorado Defendants and similar departments and agencies as arms of the state. *See* COLO. CONST. art. 4 § 1 (naming the Colorado AG a statewide executive officer); Colo. Rev. Stat. § 24-31-101(1)(a)-(b). The Colorado AG "[s]hall act as the chief legal representative for the state [and shall] appear for the state and prosecute and defend all actions and proceedings, civil and criminal, in which the state is a party[.]" Colo. Rev. Stat. § 24-34-101(1)(a). The DORA is a principal executive department whose head is appointed by the governor and confirmed by the state senate. It "serve[s] at the pleasure of the governor." *Id.* § 11-51-701. The CDS is a division of the DORA, and the DORA executive director appoints the head of the CDS. "The division is responsible for the administration of the provisions of articles 51, 53, and 59 of this title 11 and part 7 of article 75 of title 24, and shall perform such other duties as are imposed upon it by law." *See also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (holding that the Colorado Department of Human Services, another principal executive department, is an arm of the state); *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1134 (D. Colo. 2010) (same for the Colorado Department of Corrections); *Ross v. Dep't of Transp.*, 978 F. Supp. 2d 1197, 1202 (D. Colo. 2013) (same for the Colorado Department of Transportation); *E. W. Resort Transp., LLC v. Sopkin*, 371 F. Supp. 2d 1253, 1258-59 (D. Colo. 2005) (holding that

9

the Public Utilities Commission, which is also a division of DORA, is an arm of the state). Therefore, the first factor weighs heavily for finding that the Colorado Defendants are arms of the state.

### b. *The Colorado Defendants are state-funded.*

When evaluating the source of funding, courts inquire into "whether a judgment against [the Colorado Defendants]" will be paid with state funds." *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 258 (5th Cir. 2020). Colorado's Risk Management Act provides that the state's risk management fund would pay for any judgment entered against the Colorado Defendants. *See* Colo. Rev. Stat. § 24-30-1504(1)(a) ("The department of personnel shall have the [] power[] . . . [t]o coordinate and administer a comprehensive risk management program that serves all state agencies."); *Id.* § 24-30-1510(3)(a) (creating "in the state treasury a fund to be known of as the risk management fund" expenditures out of which must be made, *inter alia*, "[t]o pay liability claims and expenses related thereto, brought against the state, its officials, or its employees"). Thus, because state funds would pay any money judgment against the Colorado Defendants, this factor strongly favors a conclusion that the Colorado Defendants are arms of the state.

### c. *The third and fourth factors favor arms of the state findings.*

The Colorado Defendants are part of the state government, do not have local autonomy, and are primarily concerned with statewide problems. The DORA is the state's "umbrella regulatory agency, charged with managing licensing and registration for multiple professions and businesses, implementing balanced regulation for Colorado industries, and protecting consumers." COLO DEP'T OF REGUL. AGENCIES, https://dora.colorado.gov/about-dora (last visited June 27, 2024). The CDS regulates securities throughout the state of Colorado, and the commissioner investigates and enforces securities laws. Colo. Rev. Stat. §§ 11-51-102(1), -601(1), -602. The

Colorado AG is an executive officer within the Colorado state government. Colo. Const., art. 4, § 1. Accordingly, the Colorado Defendants do not have local autonomy to render them independent of the state of Colorado, and they are concerned with statewide problems. Thus, the third and fourth factors support finding that they are arms of the state.

Because the fifth and sixth factors are the least important, and the first four factors overwhelmingly demonstrate that the Colorado Defendants are arms of the state, the Court need not inquire further and finds that the Colorado Defendants are arms of the state. The Eleventh Amendment therefore shields them from suit unless an exception applies. There are three possible exceptions to Eleventh Amendment immunity: (1) for claims seeking injunctive or declaratory relief against a state official under *Ex Parte Young*, 209 U.S. 123 (1908); (2) a state's waiver or consent, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); and (3) Congress's abrogation of the state's immunity through section 5 of the Fourteenth Amendment, *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 364 (2001).

2. *Ex parte Young* does not apply here.

The *Ex parte Young* doctrine provides an exception to the Eleventh Amendment's broad applicability. *See Ex parte Young*, 209 U.S. at 123. Under the doctrine, federal courts "may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). To determine if *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up). The Fifth Circuit has clarified three distinct prongs to this "straightforward inquiry": the plaintiff must (1) "name individual state officials as defendants in their official capacities," *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); (2) "allege[ ]

an ongoing violation of federal law," *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); and (3) seek relief "properly characterized as prospective," *id. See Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020). If the complaint seeks prospective relief, the plaintiff "must demonstrate that the state officer has 'some connection' with the enforcement of the disputed act." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 157)).

Clark's pleadings fail on the first prong. He did not name individual state officers as defendants in their official capacities, and instead named the CDS, the DORA, and the Colorado AG. ECF No. 1 at 1. Liberally construing his pleading to name the Colorado AG in his official capacity, Clark's pleadings still fail on the second prong. Rather than allege an ongoing violation of law, Clark seeks recompense for the past revocation of his securities licenses. *Id.* at 4. Thus, Clark cannot escape the Eleventh Amendment's jurisdictional bar by resorting to *Ex parte Young*. *See Green v. Mansour*, 474 U.S. 64, 68 (1985).

### 3. Colorado did not waive immunity from state law claims.

Clark neither pleaded nor directed the Court to authority showing that the state of Colorado has waived immunity or consented to suit for Colorado state law claims. Indeed, Congress has not abrogated Colorado's Eleventh Amendment immunity for breach of contract or tort claims, and Colorado has not consented to suit in federal court. *Griess v. Colorado*, 841 F.2d 1042, 1045 (10th Cir. 1988) (Colorado has not consented to suit in federal court); Colo. Rev. Stat. Ann. § 24-10-119 (West) (The Colorado Governmental Immunity Act "shall apply to any action against a public entity or public employee in *any court of this state* having jurisdiction over any claim brought pursuant to any federal law, if such action lies in tort or could lie in tort." (emphasis added)); *Norris v. Univ. of Colo.*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019) (Eleventh Amendment bars a breach

of contract claim against an arm of the state of Colorado); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017) (same); *Tafoya v. Limon Corr. Facility*, No. 20-CV-0768-WJM-NRN, 2020 WL 6565230 (D. Colo. Nov. 9, 2020) (Colorado has not waived Eleventh Amendment immunity from tort claims.); *see also* Colo. Rev. Stat. Ann. § 24-10-108 (West) (The Colorado Governmental Immunity Act provides that sovereign immunity is a bar "to any action against a public entity for an injury which lies in tort or could lie in tort[.]").

Accordingly, Eleventh Amendment immunity bars Clark's state law claims, including his breach of fiduciary duty, breach of contract, tortious interference with a contract, defamation, emotional distress, and fraud claims. The Court should dismiss those claims without prejudice to Clark's right to refile them in an appropriate state court.

4. <u>Congress did not abrogate Colorado's immunity for constitutional claims</u>.

In his response to the Colorado Defendants' Motion, Clark clarifies that he also seeks damages against the Colorado Defendants for violating his First Amendment right to free speech, Seventh Amendment right to trial by jury, Eighth Amendment Right to be free from cruel and unusual punishment, and Fifth and Fourteenth Amendment rights to due process. ECF No. 38 at 2-3. The Eleventh Amendment bars Clark's constitutional claims. For state officials sued in their official capacities, like the Colorado Defendants, the proper vehicle to assert constitutional claims is through 42 U.S.C. § 1983. *See Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 383 (5th Cir. 1980); *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 494 n.9 (N.D. Tex. 2015) (noting that § 1983 provides the means for seeking relief against a state actor who violates the Constitution). And as already discussed, Clark has not pleaded for prospective injunctive relief so the exception under *Young* is not available.

Clark neither pleaded nor directed the Court to authority showing that the state of Colorado has waived immunity or consented to suit for claims alleged under 42 U.S.C. § 1983. The law is clear that Colorado has not waived immunity or consented to suit under these sections. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Griess v. Colorado*, 624 F. Supp. 450, 453 (D. Colo. 1985) (Colorado did not waive its Eleventh Amendment immunity, and Congress did not abrogate the state's Eleventh Amendment immunity by enacting 42 U.S.C. § 1983), *aff'd*, 841 F.2d 1042 (10th Cir. 1988); *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996) ("Congress did not abrogate the states' Eleventh Amendment immunity by enacting" 42 U.S.C. § 1983). Accordingly, Eleventh Amendment immunity bars Clark's constitutional claims against the Colorado Defendants. Even if they had waived their Eleventh Amendment immunity, the Colorado Defendants are not "persons" under § 1983 and are, therefore, not a proper defendant. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) ("[A]rms of the state are not 'persons' under § 1983."). Accordingly, the Eleventh Amendment bars Clark's constitutional claims.

Clark's response does not address the Colorado Defendants' Eleventh Amendment argument (*see* ECF No. 38), so he has waived any response and conceded the issue. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011). Judge O'Connor should therefore **GRANT in part** the Colorado Defendants' Motion to Dismiss (ECF No. 30) and **DISMISS** Clark's claims against them **without prejudice**.

The Carters argue that this means that the Court lacks federal jurisdiction over Clark's suit. ECF No. 12 at 10. However, the Carters are not arms of the state of Colorado and do not enjoy Eleventh Amendment immunity. *See Avdeef v. Royal Bank of Scotland, PLC*, No. 4:13-CV-967-

O, 2014 WL 4055369, at *8-9 (N.D. Tex. Aug. 15, 2014) (adopting recommendation dismissing state defendants on Eleventh Amendment grounds and non-state defendants on other grounds). The Court therefore turns to the remaining Defendants' motions.

### B. The Court should stay Clark's claims against CSC pending arbitration.

#### 1. A valid arbitration agreement between the parties exists under Texas law.

In deciding whether Clark and CSC agreed to arbitrate, the court must apply the applicable state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (collecting cases). The Agreement provides that "[t]he laws of the state of California as applied to agreements signed and performed in California will apply and bind the parties in any and all questions arising under this Agreement." ECF No. 27-1 at 8. Federal courts sitting in diversity must "apply the choice-of-law rules of the forum state," which here is Texas. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, at 408 (5th Cir. 2012). In Texas, courts "need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Rather, in the absence of a conflict, the Court "simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (collecting cases). "Texas courts presume that other states' laws are the same as its own[,]" and the party urging application of a different state's law "bears the burden of rebutting that presumption." *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (citing *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 & n. 5 (Tex. 2008)). Because CSC and Clark do not address the issue, the Court presumes that there is no conflict between Texas and California contract law and "simply appl[ies]" Texas law. *Mumblow*, 401 F.3d at 620.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (collecting Texas cases). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotation marks and citations omitted). Clark did not respond to the motion to compel arbitration, so the Court finds that there is a valid agreement to arbitrate between the parties.

2. The dispute is within the scope of the agreement.

If the court finds that the parties agreed to arbitrate, the court must then determine "whether the dispute is within the scope of that agreement." *Tittle*, 463 F.3d at 418. "Where the arbitration clause is broad, it is only necessary that the dispute touch matters covered by the agreement to arbitrate." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998).

In the Agreement, Clark

> agree[d] that any controversy or claim arising out of or relating to . . . this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab, *or the breach of any such agreements,* . . . or in any way arising from your relationship with Schwab, *its parent, subsidiaries, affiliates, officers, directors, employees, agents, or service providers* . . . will be settled by arbitration. . . . Such arbitration will be conducted by, and according to the securities arbitration rules and regulations then in effect of, FINRA . . . Any award the arbitrator makes shall be final and binding . . . . This arbitration agreement shall be enforced and interpreted exclusively in accordance with applicable federal laws of the United States, including the Federal Arbitration Act. Any costs, fees, or taxes involved in enforcing the award shall be fully assessed against and paid by the party resisting enforcement of said award.

16

ECF No. 27-1 at 6 (emphasis added). This is a broad provision that plainly encompasses Clark's claims. The Agreement further provides that the arbitration clause "survive[s] . . . the termination of services rendered under [the] Agreement." ECF No. 27-1 at 6. Clark brings claims under the Agreement and alleges that CSC (which is a party to the arbitration clause) breached the Agreement. *See* ECF No. 1. Thus, the Court must compel arbitration.

Clark bears the burden "of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). Because he did not respond, he did not meet his burden, and Judge O'Connor should compel arbitration. *See Fruge*, 663 F.3d at 747.

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024). Here, CSC moves to "stay all proceedings pending resolution of this dispute in binding arbitration." ECF No. 27 at 17. Judge O'Connor should thus stay the case as it relates to Clark's claims against CSC pending resolution of the arbitration proceedings. He also should order that the Clerk administratively close the case in the meantime.

### C.  The Court lacks personal jurisdiction over the Carters.

The Carters move to dismiss Clark's claims against them under Federal Rule of Civil Procedure 12(b)(2). ECF No. 12 at 10-12. The record shows that the Carters reside in South Dakota. ECF No. 12-1 at 37, 46. Therefore, Clark bears the burden of establishing the Court's jurisdiction. *Stuart*, 772 F.2d at 1192. His complaint is devoid of facts demonstrating that the Court has personal jurisdiction over the Carters. ECF No. 1. Clark alleges (1) that he attempted "to resolve all the false allegations, charges, and claims" levied against him with the Carters "to no

avail"; (2) that the Carters aided the CDS in its efforts to revoke Clark's securities licenses; and (3) that they played a part in the "total and complete destruction" of CIB. *Id.* at 3. Clark's pleadings do not show any contacts between the Carters and Texas whatsoever. Moreover, Clark's response to the Carters' motion does nothing to cure this deficiency or even address the Carters' personal jurisdiction argument. *See* ECF No. 18; *Fruge*, 663 F.3d at 747. Therefore, because Clark has not alleged facts to show that the Court has personal jurisdiction over the Carters, Judge O'Connor should **GRANT** the Carters' Motion (ECF No. 12) and **DISMISS** Clark's claims against them **without prejudice**.

### D.   Venue is improper, and the Court should dismiss Clark's remaining claims.

The Northern District of Texas is an improper venue for this case, and dismissal of the claims against the remaining Defendants is proper. First, several Defendants are not Texas residents, (*see, e.g.*, ECF No. 12-1 at 37, 46 (the Carters reside in South Dakota); *Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018) ("FINRA is a Delaware corporation with its principal place of business in Washington, D.C.")), so venue under 28 U.S.C. § 1391(b)(1) is inapplicable. Second, the Complaint alleges that the actions at issue in this case took place in Colorado. *See* ECF No. 1 at 2-4 (alleging that Clark's securities license was revoked in Colorado and that his administrative law and arbitration proceedings took place in Colorado). Nothing in the Complaint suggests that any part of the events at issue occurred in Texas, so § 1391(b)(2) does not apply. Finally, Section 1931(b)(3) does not apply because there is another district where Clark could have properly brought the case. Here, Clark could and should have sued in Colorado. *See* ECF No. 1 at 2-4.

"Where venue is improper, the district court should generally dismiss the case. But the court retains discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (quoting 28 U.S.C. §

1406(a)). Courts consider "the plaintiff's reasons for filing suit in the improper district in the first place and ask whether the 'plaintiff's belief that venue was proper was in good faith and reasonable.'" *Id.* (quoting 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2021)). Based on the pleadings and the facts here, the Court finds that a transfer would not aid in the interest of justice. Both FINRA's Motion and the Carters' Motion raise this argument. *See* ECF Nos. 12 at 12; 24 at 16. Clark, however, does not address it in his responses, so he waives it. *See* ECF Nos. 18, 34; *Fruge*, 663 F.3d at 747. Accordingly, Judge O'Connor should **GRANT in part** FINRA's Motion (ECF No. 24) and **DISMISS** all of Clark's claims **without prejudice**.

## IV.   CONCLUSION

The undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motions (ECF Nos. 12, 24, 27, 30) **in part**, **STAY** Clark's claims against CSC pending arbitration of the dispute between Clark and CSC, and **DISMISS** Clark's remaining claims **without prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** June 27, 2024.

*[signature: Hal R. Ray, Jr.]*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE